IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHEN H. LEBOVITZ, | )<br>) |
| Plaintiff, | )<br>) |
| | ) Civil Action No. 2:11-cv-01014 |
| v. | )<br>) |
| | ) Judge Mark R. Hornak |
| HARTFORD INSURANCE COMPANY<br>OF THE MIDWEST, | )<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION

This is an insurance case arising under Pennsylvania law, removed to this Court from Pennsylvania state court. (ECF No. 1). The Plaintiff claims that he was severely injured and subsequently disabled when the bicycle he was riding was hit by an unidentified car. He has claimed stacked uninsured motor vehicle insurance benefits of $2,000,000 under a policy underwritten by the Defendant. While some benefits have been paid, they are not in the scope or amount Plaintiff claims he is entitled to, so he has sued the Defendant to recover them. Defendant has vigorously contested that claim on a number of grounds, including those which call into question the fact, cause and severity of the accident and of Plaintiff's afflictions and condition. (ECF Nos. 1, 6).

It appears from the record that among the professional services that Plaintiff sought and received over the years prior to the alleged accident was marriage counseling services from Deborah West, Ph.D., a licensed social worker. Defendant has sought, via a discovery subpoena, *See* Fed. R. Civ. P. 45, access to Plaintiff's records from Dr. West in an effort to size up Plaintiff's history and condition in light of the disputes noted above. In particular, Defendant claims that Plaintiff has made varying statements regarding the nature of his condition over time,

1

and that Dr. West's records would likely demonstrate that. Plaintiff has given his written consent to the release to Defendant of those records. (ECF No. 75-1 at 1, n.2). His ex-wife Pilar Tanning has not, and she opposes the production of any records by Dr. West. The question before the Court is how to address sought-after production of those records.[1]

The Magistrate Judge entered a clarified Order on November 5, 2012 ("Order") directing Dr. West to produce all of her records relative to Plaintiff, taking care to first redact anything from the records that does not regard Plaintiff, but "rather pertains to Pilar Tanning or Lebovitz children." (ECF Nos. 79-2, 81). The rub comes from the fact that Ms. Tanning has not consented to the release of any records of Dr. West, and Dr. West asserts her right, if not duty, to resist the production of any such records. Ms. Tanning has also submitted declarations to this Court (ECF Nos. 94, 95) stating that she does not consent to the release of any of Dr. West's records, and purporting to join in Dr. West's Motion to Quash.

Dr. West takes the position that she can release no records to Defendant even within the scope of the Order, since in her estimation, it is literally impossible for her to perform any redaction to cull out the material she is not required to produce under the Order. (ECF No. 73-1, 82-1). Seemingly, it is Dr. West's position that *all* of the content of her records is necessarily "pertaining to Pilar Tanning, or Lebovitz children."

It is also Dr. West's position that while she is not a licensed psychologist, her advanced levels of education and training, and her social work practice, require this Court to treat her as if she were for purposes of applying Pennsylvania statutory privilege law, and when that is done, she is cloaked with an expansive absolute privilege which bars her compliance with the

---

[1] Dr. West timely moved to quash the subpoena. (ECF No. 73). That Motion to Quash was fully litigated before the Magistrate Judge. Not satisfied that the Magistrate Judge's final Order as to the subpoena was proper, Dr. West filed Objections to that Order, which are the subject of this Memorandum Opinion. (ECF No. 82). The matter has been fully briefed, and this Court heard oral argument on the Objections on December 5, 2012.

2

Magistrate Judge's Order. (ECF No. 74). She also contends that Pennsylvania decisional law affords a broad blanket of all-encompassing privacy-based protection for the benefit of Ms. Tanning that is also in play here. Finally, Dr. West contends that both the parties and the Court must accept her determination that redaction cannot solve the issue of Ms. Tanning's non-consent, that no judicially-supervised review of her judgment as to the impossibility of redaction of her records is permitted, and that the Magistrate Judge's Order directing her production of any records must be overturned.

The Order is a discovery order, and the applicable statute, rule and precedent of our Court of Appeals directs that such a pretrial order is subject to the standard of review of non-dispositive orders, even where questions of claimed privilege apply. 28 U.S.C. §636(b)(1)(A); Fed. R. Civ. P. 72(a); *see Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000). Thus, this Court may overturn the Order only if it is clearly erroneous or contrary to law.

As a preliminary matter, the discovery sought by Defendant's subpoena directed to Dr. West is plainly within the scope of discovery under Fed. R. Civ. P. 26(b)(1). Among other things, Defendant contests the fact of the claimed accident, and the timing and cause of Plaintiff's current conditions.[2] Given the nature of the defenses asserted, and the issues being contested in this case, what Plaintiff may have told others (including presumably Dr. West) about his mental health condition (and when) and what was observed about it before the claimed

---

[2] Dr. West downplays the significance of the Defendant's interests in this case, arguing that since the only thing that the Defendant has at risk is money, its interests are necessarily outweighed by any privacy interest of Ms. Tanning. It appears from the filings in this case that Plaintiff seeks the recovery of a very large sum of money, namely $2,000,000, from Defendant (ECF No. 96), and Defendant's position, boiled down to its essentials, is that Plaintiff has concocted this entire episode in an effort to collect that very large sum of money as to which he has no entitlement at all. (ECF No. 97). Given this context and that "only money" is at the heart of virtually all civil litigation, this Court is not prepared to adopt Dr. West's contention that Defendant's interests here are essentially weightless.

3

accident will either be relevant and admissible, or is at least reasonably calculated to get to that point.

If there is a privilege blocking any obligation on Dr. West's part to produce the records requested by Defendant and as ordered by the Magistrate Judge, it is one created by Pennsylvania law. *See* Fed. R. Evid. 501. Thus, the Court must examine Pennsylvania substantive law to determine whether there is an evidentiary privilege that applies here.[3]

What Plaintiff told Dr. West is fair game, as he has provided a written consent and authorization for release of the records of Dr. West. If Pennsylvania's psychiatrist/licensed psychologist privilege, 42 Pa. Cons. Stat. Ann. §5944 (West 2000), did apply here as to Dr. West, it would apply only to what Ms. Tanning told Dr. West. Thus, if this privilege were applied by analogy to Dr. West, it would apply only to what Dr. West was told by Ms. Tanning. It would not apply to Dr. West's opinions, conclusions, advice, diagnoses, treatment plans, etc. even as to Ms. Tanning. *See In re L.F.*, 995 A.2d 356, 360-61 (Pa. Super. Ct. 2010); *Commonwealth v. Simmons*, 719 A.2d 336, 341 (Pa. Super. Ct. 1998). It would therefore serve to protect only what Ms. Tanning communicated to Dr. West, and Dr. West's avowed inability to parse her records would be of much lesser moment.[4]

---

[3] This case arises under, and its decision is controlled by, state law. It was removed to this Court on diversity of citizenship grounds. 28 U.S.C. §1332(a). There is no issue of federal substantive law in this case, and only Pennsylvania law will provide the rule of decision. 28 U.S.C. §1652. This Court does not believe that the Supreme Court's holding in *Jaffee v. Redmond*, 518 U.S. 1 (1996) cloaks Dr. West in the privileges she asserts here. That case focused on claims under federal law, 42 U.S.C. §1983, unlike the situation here. *See id.* at 17, n.15 (state privilege law applies where only state law claims are asserted in federal court); *Doe v. Ensey*, 220 F.R.D. 422, 426, n.14 (M.D. Pa. 2004) (same). In applying a federal psychologist/patient privilege in that case, the Court also noted that the law of Illinois, where the case was tried, treated a social worker as "covered" by that state's statutory privilege. *Jaffee*, 518 U.S. at 6. As will be seen, that is not the case in Pennsylvania. Finally, our Pennsylvania appellate courts have repeatedly declined to treat social workers acting alone as if they were psychiatrists or psychologists for privilege purposes, and in that context, this Court does not believe it may do so here as a matter of federal evidentiary law.

[4] Dr. West is taking the position that the *entire* contents of *all* of her records contain either nothing but what Ms. Tanning told her, or that the entire contents of those records would necessarily and inevitably reveal what Ms. Tanning told her. This is an extraordinarily sweeping assertion given that Dr. West did meet and talk with Plaintiff

4

As a general matter, evidentiary privileges are not favored or presumed, and are to be narrowly construed in a fashion that necessarily fulfills their societal purpose, but also in a way that meets the also important goal of providing for the production of "every person's" evidence in litigation. *Simmons*, 719 A.2d at 340; see *U.S. v. Nixon*, 418 U.S. 683, 709 (1974).

No party has pointed to any Pennsylvania appellate case that directly applies Pennsylvania's statutory psychologist privilege to social workers *qua* social workers.[5] Only in situations where a social worker is acting as the agent under the specific direction and authority of a licensed psychologist as to a given patient has that been the case. *Simmons*, 719 A.2d at 342-43. It is telling that neither Pennsylvania's Legislature nor its appellate courts have created a "social worker" privilege.[6] Our state's Superior Court recently noted that to be the case, and recognized that no Pennsylvania appellate court has judicially applied that statutory privilege to social workers as such. *In re L.F.*, 995 A.2d at 360. Thus, absent contrary direction from the Pennsylvania appellate courts, or the Third Circuit applying Pennsylvania law, it was not error for the Magistrate Judge to decline to extend this statutory privilege to Dr. West.

---

one-on-one. Dr. West has now filed three declarations, each carefully phrased, in an effort to make this point. From the Court's perspective, many of the averments in them are of a rather gauzy nature, and in many ways avoid the precise issue of whether it is possible to redact only what was stated by Ms. Tanning in a direct communication to Dr. West.

[5] The Court of Common Pleas of Northampton County, Pennsylvania extended Pennsylvania's statutory psychiatrist/psychologist privilege to a "counselor" in *Miller v. Roberts*, 38 Pa. D&C 3d 74, 83 (1985). Given that various Pennsylvania appellate courts, as noted in this opinion, have had opportunities since *Miller* to adopt that reasoning and have declined to do so, this Court does not find *Miller* to be persuasive authority to recognize an extension of that privilege to social workers acting independently of a psychiatrist or psychologist in the treatment of a given patient.

[6] A route the Pennsylvania Legislature did take when it wanted to extend a testimonial privilege to sexual assault counselors. *See* 42 Pa. Cons. Stat. Ann. §5945.1 (West 2000). The Legislature acted when the Pennsylvania Supreme Court declined to create such a privilege by decisional law. *See In the matter of Pittsburgh Action Against Rape (PAAR)*, 428 A.2d 126 (Pa. 1981). To date, neither the General Assembly nor the Pennsylvania Supreme Court has extended the psychiatrist/psychologist privilege to social workers, no matter how robust their education, training or experience.

5

Dr. West's other argument is that Pennsylvania also recognizes a broad "right of privacy" in Ms. Tanning as a matter of state constitutional law that serves to bar Dr. West's production of any marriage counseling records which even implicitly refer to Ms. Tanning. To the extent such a privilege exists at all, it does not go nearly as far as Dr. West might hope.

First, the reasoning of the lead opinions in the cases relied on by Dr. West as positing such a sweeping privilege covering all of her records -- *In re June 1979 Allegheny Cnty. Investigating Grand Jury (Petition of Lanni)*, 415 A.2d 73 (1980) and *In re "B"*, 394 A.2d 419 (1978) -- did not command the vote or concurrence of a majority of the Justices of the Pennsylvania Supreme Court, nor did any opinion in those cases advocating for such a generalized privacy doctrine. Under Pennsylvania law, such plurality reasoning carries no precedential weight, *Commonwealth v. Bethea*, 828 A.2d 1066, 1073 (Pa. 2003). Further, when that concept was revisited by the Pennsylvania Supreme Court (nearly twenty years after those cases) in *In the Matter of T.R., J.M., C.R. and C.R. (Appeal of A.W.)*, 731 A.2d 1276 (Pa. 1999), there was again no court majority adopting, or even accepting, the lead opinion's view that the Pennsylvania constitution created such a generalized right of privacy, in that case as to the disclosure of a parent's psychological evaluation in a juvenile dependency case. The lead opinion was that of two (2) of seven (7) sitting Justices, neither of whom serve on that court today. *Id.* at 1276. Further, it is apparent from the opinions of the Superior Court in *In re L.F.* and *Simmons* that that court did not view such a broadly stated privacy-based "privilege" as being applicable in circumstances in which it arguably would have been.[7] Thus, it was not error

---

[7] Third Circuit law is not to the contrary. In *Hahnemann Univ. Hosp. v. Edgar*, 74 F.3d 456 (3d Cir. 1996), the Court observed that "the Pennsylvania Supreme Court has given the patient's right to confidentiality of *psychiatric records* constitutional status . . . " *Id.* at 463. First, the records at issue here are not "psychiatric records," and in any event, that observation in *Hahnemann Hospital* is properly viewed as *dicta*, in that the decision in that case turned on the application of the Pennsylvania Mental Health Procedures Act (MHPA).

for the Magistrate Judge to decline to conclude that such a privilege prevented the entry of his Order.[8]

The position that Dr. West advocates that the entirety of her records related to marriage counseling involving the Plaintiff embodies what Ms. Tanning told to Dr. West or pertains to Ms. Tanning, and that both the parties and this Court must accept her unilateral determination that no redaction of Ms. Tanning's communications from such can occur, is breathtaking in its scope and breadth.[9] The Court finds it difficult to conclude that the law designates Dr. West to be the one, only, and final arbiter as to such matters, absent the most compelling and unequivocal statement of applicable law to that effect.[10]

The Order entered by the Magistrate Judge in the context of Dr. West's Motion to Quash is neither clearly erroneous, nor contrary to law.[11] Social workers provide vital and much needed

---

[8] By placing the limitations he did in his Order, the Magistrate Judge did accord a level of protection for information in Dr. West's records that pertains to Ms. Tanning, as permitted by the applicable civil rules. *See* Fed. R. Civ. P. 26(c)(1)(D), 45(c)(3)(C). As noted above, if Pennsylvania's statutory privilege applied, the limitations contained in the Order would not have been as broad.

[9] Even the invocation of a privilege by the President of the United States is subject to judicial consideration and review, *U.S. v. Nixon, supra,* and this Court is entrusted to review, *in camera,* materials containing the highest levels of top secret national security information. *See Classified Information Procedures Act,* 18 U.S.C. Appx., §1-16.

[10] In *Commonwealth v. Kyle,* 533 A.2d 120 (Pa. Super. Ct. 1987), the Superior Court held that in a situation where the statutory psychologist-client privilege applied to specific communications by a client to psychologist and a criminal defendant nonetheless sought access to such records on Due Process grounds, the privilege was not overcome . In *Kyle,* the Court declined to order an *in camera* review to determine the potential "helpfulness" to the criminal defendant of such statutorily-shielded communications. The Court's decision relied on the unquestioned coverage of a directly-applicable statutory absolute privilege to plainly covered communications. None of those premises are present in this case. In *Kyle,* the argument for *in camera* review was really an effort to argue that there was a societal interest that trumped the privilege. Here such a review would instead be aimed at determining compliance with a discovery order in a situation where the Court has determined such privilege does not apply. Further, the "common law" privacy interest privilege relied on by Dr. West would not be absolute in any event. *In re 1979 June Grand Jury,* 415 A.2d 73; *see Behar v. Pa. Dept. of Transp.,* 791 F.Supp.2d 383, 392-93 (M.D. Pa. 2011). As Justice Roberts noted in his concurring opinion in *In re June 1979 Grand Jury,* there are sufficient mechanisms available to trial courts to protect confidential material that is being produced such that abdicating to the proponent of a privacy-right based privilege the final say as to its scope or application would be unnecessary. 415 A.2d at 153.

[11] Arguably, because the Order is not as limited as it would be if the Pennsylvania statutory privilege applied to Dr. West's records, *e.g.,* barring disclosures only of communications of Ms. Tanning to Dr. West, it may actually be

guidance, care and support to their clients. Of that there can be no doubt. While courts should be cautious in allowing access to counseling records so as to appropriately consider whether they contain personal information as to a non-party along with the necessity for the development of relevant evidence, the Magistrate Judge's Order strikes that balance. There is no Pennsylvania statutory privilege applicable to Dr. West's records, and the Court cannot conclude that there is a privacy-based privilege created by Pennsylvania decisional law applicable here. To the extent that Ms. Tanning's interest are at stake here, Dr. West has certainly done her duty in vigorously raising and litigating those issues, and the Magistrate Judge has appropriately accorded them due weight by way of the limitations contained in his Order. Thus, Dr. West must now comply with the Order.[12]

An appropriate Order will issue.

Mark R. Hornak
United States District Judge

Dated: January 14, 2013

cc: All counsel of record

---

overly-protective of such records. Nonetheless, Defendant did not object to the Order, so this Court will not further address that matter here.

[12] To the extent that Dr. West contends that the entirety of her records either expressly contain communications to her from Ms. Tanning, or that the entirety of such records necessarily reveals such communications, she must file a declaration with the Court, so stating directly. If that occurs, this Court may appoint a Special Master of appropriate education, experience and training to conduct an *in camera* review of her records relative to Plaintiff. Should it be determined that Dr. West's position is substantially justified, the costs of such a Special Master may be assessed against Defendant. To the extent they are not, they may be assessed against Dr. West. Also, Defendant may elect to cut to the chase and subpoena Dr. West to testify under oath at a deposition as to matters pertaining to, and communications with, Plaintiff.